UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DELORIS GLOVER,

                     Plaintiff,

      - against -

FEDERATION OF MULTICULTURAL
PROGRAMS, INC. and DANNY KING,

                     Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-3238 (RRM) (PK)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Deloris Glover, proceeding *pro se*, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, against her former employer, Federation of Multicultural Programs, Inc. ("FMCP"), and former co-worker Danny King, alleging gender discrimination and retaliation. On November 3, 2015, defendants filed a motion to dismiss. (Mot. to Dismiss (Doc. No. 10).) Despite multiple orders directing plaintiff to respond to defendants' motion, plaintiff has not filed a response. For the reasons below, defendants' unopposed motion to dismiss is granted and Glover is granted 30 days' leave to file an amended complaint with respect to her claims against FMCP.

## BACKGROUND

The following facts are drawn from Glover's complaint and are assumed to be true for the purposes of this Memorandum and Order. Defendant FMCP operates group homes for adults. (Compl., Ex. A.) Glover worked as a House Manager at one of FMCP's group homes. (*Id.*) Glover states that, pursuant to her duties as House Manager, she decided to change the work schedule for employees at the group home she managed. (*Id.* at 14.) At a meeting on

January 17, 2014, to discuss the changes, FMCP employee James Sutton protested the changes. (*Id.*) Glover still changed the work schedule.

After the scheduled changes took effect in February 2014, Sutton failed to show up for work at his newly-scheduled time. (Compl. at 14.) Glover reported Sutton to FMCP's Human Resources Department. She was instructed to change the work schedule back – and did so. (*Id.*) Sometime thereafter, Glover obtained approval to change the work schedule again. In April 2014, when that schedule change came into effect, Sutton once again failed to show up for work at his scheduled time. (*Id.*) Glover reported Sutton and another male employee for abandoning their job responsibilities, but according to Glover, FMCP took no action. (*Id.* at 14, 24, 25.)

On the day Glover wrote up the report for Sutton's absence, April 28, 2014, (Compl. at 21), Sutton reported to defendant Danny King that Glover, his manager, was sexually harassing him. (Compl., Ex. B, D.) According to an FMCP Human Resources Department memorandum Glover attaches to her complaint, Sutton stated that Glover told him, "If you give me a kiss, I won't change your shift." (Compl., Ex. B.) Sutton also apparently showed FMCP HR "pictures from his cell phone of Ms. Glover in sexual poses with inappropriate outfits." (*Id.*) The memorandum reports that in a meeting regarding the allegations, Glover admitted "that she did send the pictures to Mr. Sutton and stated, 'I was flirting.'" *(Id.)* Glover denies this, stating in her complaint that she "never participated in an investigation at all" and "never made [this] statement." (Compl. at 8.)

Glover says she was suspended on April 26, 2014, "without notice or reason." (Compl. at 5.) Glover explains the subsequent events in a letter attached to her complaint, which Glover wrote to the New York State Division of Human Rights on September 29, 2014. (*Id.*, Ex. D.) In the letter, Glover says that she was invited back to work at FMCP in May 2014. (*Id.*) She was

2

assigned a lower-ranking position at a new location, but retained the same pay. (*Id.*) According to Glover, the reason for her suspension was never explained to her. (*Id.*)

After her transfer, Glover says that she took an approved vacation. (Compl. at 32.) At another point in her complaint, however, Glover says that during this time off she was actually taking sick days, which she "accidentally recorded as vacation on the document." (*Id.* at 28.) When Glover returned from her time off, on July 8, 2014, she was told not to report to work. Glover was not told the reason for this suspension either, despite Glover calling FMCP and inquiring via letter. (*Id.* at 32, 34.) On August 1, 2014, Glover walked into FMCP's corporate office and was given a letter of termination dated July 8, 2014. (*Id.* at 32; *see also id.* at 35.) After telling FMCP's HR Manager that she would not accept an outdated termination letter, the HR Manager printed the identical letter with an updated date and gave it to Glover. (Compl. at 32, 36.)

Glover attaches to her complaint FMCP's letter to the New York State Division of Human Rights in which FMCP explains the basis for Glover's termination. (Compl., Ex. A at 8.) This letter reiterates the sexual harassment allegations described above, and goes on to state:

> [O]n May 29 and 30, and June 5, 12 and 18, Ms. Glover completed time sheets showing that she had worked those days when, in fact, she had called out sick (see attached time sheets). Ms. Glover was then a no-call/no-show on June 19 and took vacation from June 20-27. Ms. Glover, however, had never requested vacation and thus had simply abandoned her job.

(Compl., Ex. A.)

Glover admits that she submitted timesheets with incorrect hours, but says that this was a "completely innocent mistake" which her manager caught and corrected. (Compl. at 30.) Regarding the vacation time, as explained above, in different parts of her complaint Glover

3

claims that she got approval for the vacation and that she never took the vacation, but rather misrecorded her sick days as vacation time. (Compl. at 28, 32.)

In addition to receiving and reporting Sutton's sexual harassment claim against Glover, (Compl., Ex. B, D), defendant Danny King also allegedly provided FMCP with documentation of Glover's improperly submitted timesheets, which Glover says were "altered and falsified." (Compl. at 28.) Glover claims that King and FMCP terminated her in "an act of retaliation," (*id.* at 32), due to a sex discrimination lawsuit her sister, Tieraney Glover, filed against FMCP after she, too, was terminated by FMCP, (*id.* at 5, 13). Glover further alleges that King and Sutton "concocted a story of sexual harassment," (*id.* at 5), and that the "accusations are being used as a cover up [sic] for [King's] favoritism toward men," (*id.* at 10). In support of this claim, Glover noted a date discrepancy to the New York State Division of Human Rights: "Mr. King falsely claims that the report from the male worker came in on April 28, 2014, yet [King] had already suspended me on April 26, 2014 without reason." (Compl., Ex. D.)

Sometime before September 11, 2014, Glover filed a charge of discrimination against FMCP with the New York State Division of Human Rights. (Compl., Ex. A.) On March 3, 2015, the United States Equal Employment Opportunity Commission adopted the findings of the New York State Division of Human Rights and issued Glover a "right to sue" letter. (Compl. at 7.) Glover does not attach these documents to her complaint; nor does she attach any other document in which she alleges gender discrimination. On June 1, 2015, Glover filed the instant action alleging that she was terminated due to her sex, and as retaliation for her sister's civil suit for sex discrimination filed against FMCP, both acts constituting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Compl. at 1, 5.)

On November 3, 2015, defendants FMCP and King filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss (Doc. No. 10).) FMCP first argues that Glover's claims against defendant King must be dismissed because there is no individual liability under Title VII. (*Id.* at 6.) FMCP also argues that the entirety of Glover's complaint must be dismissed because it fails to plead facts sufficient to establish a plausible claim to relief. (*Id.* at 11.)

On November 13, 2015, Glover was directed to file a response to defendants' motion on or before November 30, 2015. (Order of 11/13/2015.) On April 4, 2016, Glover was again directed to file a response and was warned that failure to respond by April 25, 2016, would result in the Court considering the motion unopposed. (Order of 4/4/2016.) Finally, on April 3, 2018, this Court issued an Order to Show Cause directing Glover "to provide a status update" by April 10, 2018. (Order to Show Cause of 4/3/2019.) Glover has not filed a response to date. The Court therefore deems Glover's motion unopposed.

## STANDARD OF REVIEW

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. The Court is required to read Glover's *pro se* pleading liberally, interpreting it to raise the strongest arguments it suggests. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008). The Court's review is limited to facts alleged in the complaint, documents attached to the complaint or incorporated by reference in the complaint, documents integral to the complaint, and matters of which the Court may take judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

At the pleading stage, a plaintiff's burden is "minimal." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). To survive a motion to dismiss "in a Title VII discrimination

5

case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Given that employment discrimination claims normally involve employers' "unstated intent," courts recognize that "plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, *i.e.*, a mosaic of intentional discrimination." *Id.* at 86 (internal quotation marks omitted) (citations omitted). "[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) "because" he has opposed any unlawful employment practice." *Id.* at 90 (quoting 42 U.S.C. § 2000e-3(a)).

Although Glover has not responded to the arguments raised in defendants' motion to dismiss, "the lack of opposition does not, without more, justify dismissal." *James v. John Jay Coll. of Criminal Justice*, 776 F. App'x 723, 724 (2d Cir. 2019) (summary order) (citing *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000)). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall*, 232 F.3d at 323.

## DISCUSSION

### I. Claims Against King

Defendants first seek to dismiss all claims against defendant King on the ground that individuals cannot be liable under Title VII. (Mot. to Dismiss at 4.) Defendants are correct. Individuals such as King, even if they are an employee's supervisor, may not be held personally liable for violations of Title VII. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[W]e note that 'individuals are not subject to liability under Title VII.'" (quoting

*Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam))); *see also Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 492 (E.D.N.Y. 2015) ("Individual defendants may not be held personally liable for alleged violations of Title VII."); *Perry v. State of New York Dep't of Labor*, 02-CV-7566 (LBS), 2003 WL 22327887, at *1 (S.D.N.Y. Oct. 10, 2003) (dismissing Title VII claims against individual supervisors because "the Second Circuit has unambiguously denied" that Title VII supports liability for individual supervisors for discriminatory conduct). Glover's claims against King as an individual must therefore be dismissed.

## II. Retaliation Claim Against FMCP

Title VII provides, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Glover brings a retaliation claim against FMCP, alleging that she was terminated in retaliation for her sister Tieraney Glover having filed a separate employment discrimination case against FMCP. (Compl. at 5.)

FMCP argues that Glover's retaliation claim must be dismissed because she has failed to plausibly allege a causal connection between her termination and her sister's lawsuit. Specifically, FMCP contends that Glover fails to plead facts showing that FMCP was aware of Glover's sister's lawsuit when it terminated Glover. (Mot. to Dismiss at 10.)

FMCP is correct. To survive a motion to dismiss, Glover "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013)). Reviewing the docket in that matter, *Tieraney Glover v. Federation of Multicultural Programs*, No. 14-CV-4006 (KAM)

(LB), (E.D.N.Y June 26, 2014), the Court takes notice of the fact that FMCP acknowledged receipt of Tieraney Glover's mailed summons on August 5, 2014.[1] As FMCP explains in its motion, Glover alleges no facts in this case supporting the conclusion that FMCP was aware of Glover's sister's lawsuit before August 5, 2014. (Mot. to Dismiss at 11.) In her pleading, Glover states that she was informed of her termination at least by August 1, 2014, although she states that FMCP's original termination letter was dated July 8, 2014. (Compl. at 32.) Given that FMCP only acknowledged receipt of the mailed summons on August 5, 2014, there is no basis to conclude it was notified of the case earlier than that date. *Id.* Because Glover pleads no facts establishing that FMCP had knowledge of her sister's complaint, she has not plausibly alleged that that lawsuit was the but-for cause of her termination. *See, e.g., Stephan v. W. Irondequoit Cent. Sch. Dist.*, 769 F. Supp. 2d 104, 109 (W.D.N.Y.), *aff'd*, 450 F. App'x 77 (2d Cir. 2011) (dismissing retaliation claim where "plaintiff offer[ed] no evidence that the [employer] had any knowledge of th[e] protected activity before it made the decision to terminate her employment.").

### III. Sex Discrimination Claim Against FMCP

Title VII also prohibits "an employer from taking an adverse employment action against an individual because of such individual's race, color, religion, sex, or national origin." *Menaker*, 935 F.3d at 30 (internal quotation marks omitted) (citation omitted). Glover brings a claim alleging that FMCP terminated her because of her sex. FMCP disputes that Glover has

---

[1] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

pled facts plausibly supporting an inference that its adverse employment action had discriminatory motivation. (Mot. to Dismiss at 11.)

To meet the minimal pleading burden required to survive a motion to dismiss, Glover must only plausibly allege that her sex "was a motivating factor" in FMCP's decision to terminate her. *Vega*, 801 F.3d at 86. Glover fails to meet this low threshold, however, as her complaint does not allege facts providing even "minimal support for the proposition that [FMCP] was motivated by discriminatory intent." *Id.* 86–87 (quoting *Littejohn*, 795 F.3d at 311).

Glover attaches documents to her complaint which she states "support [her] statement of discrimination based on gender . . . ." (Compl. at 10.) The Court reviews these documents as part of Glover's complaint because she attached them to her complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). These documents, Glover's annotations on the documents, and other typed text Glover includes in her complaint, show that Glover was embroiled in a contentious relationship with Sutton related to work schedules, (Compl. at 14), that Sutton subsequently accused Glover of sexual harassment, (Compl., Ex. B), and that FMCP ultimately terminated Glover, citing Sutton's harassment allegation, as well as Glover's alleged falsification of timesheets and unauthorized vacation, (Compl., Ex. A).

Glover's complaint fails to plead any facts casting doubt on FMCP's stated basis for terminating Glover. The closest Glover comes to such an allegation is the allegation that defendant King showed "favoritism toward men." (Compl. at 10.) Yet this allegation, on its own, does not constitute a claim that FMCP terminated Glover due to her sex. Glover's complaint provides evidence that FMCP terminated Glover due to her sexual harassment of an employee, her submission of false time sheets, and her decision to take an unauthorized vacation. (Compl., Ex. A.) Although Glover adds factual color to the circumstances surrounding these

bases for her dismissal, her complaint neither denies the underlying conduct FMCP cited for its decision, nor provides any facts supporting a plausible inference that Glover's termination was in fact motivated by her sex. Accordingly, Glover's sex discrimination claims must be dismissed.

### IV. Leave to Amend

*Pro se* litigants should be given "at least one opportunity to amend 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 856 (2d Cir. 2018) (summary order) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). However, a court is "under no obligation to [grant leave to amend] if it determines the amendments would be futile." *Id.* (citing *Cuoco*, 222 F.3d at 112).

Leave to amend is denied with respect to Glover's claims against King, since amendment would be futile due to the bar against individual liability under Title VII. *See Cuoco v. Moritsugu*, 222 F.3d at 112 (2d Cir. 2000).

Glover is granted leave to replead her claims against FMCP, however. Although Glover has failed to plead facts showing that FMCP was aware of Glover's sister's lawsuit prior to Glover's termination, the Court cannot conclude with certainty that such evidence does not exist. Should she choose to replead, Glover should provide facts to show that FMCP was aware of Glover's suit when Glover's termination from FMCP was finalized.

The Court notes that Glover's retaliation claim may face additional hurdles. Glover alleges retaliation based on her sister's protected activity – a claim which implicates an unsettled area of law. The Second Circuit has not squarely addressed under what circumstances a person may bring a retaliation claim alleging retaliation for another person's protected conduct. *See Ulrich v. Soft Drink, Brewery Workers & Delivery Employees, Indus. Employees,*

10

*Warehousemen, Helpers & Miscellaneous Workers, Greater New York & Vicinity, Local Union No. 812*, No. 17-CV-4730 (KMK), 2019 WL 6498089, at *7 (S.D.N.Y. Dec. 3, 2019) (citing cases); *Gonzalez v. New York State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 347 (N.D.N.Y. 2000) (finding that wife could state a Title VII retaliation claim based on allegations that she suffered adverse employment action due to her husband's discrimination complaints); *but see Parker v. AECOM USA, Inc.*, No. 09-CV-1078 (WWE), 2010 WL 625417, at *4 (D. Conn. Feb. 17, 2010).

Glover is also granted leave to replead her sex discrimination claim. The Court cannot conclude on the basis of Glover's complaint that her firing was not motivated by her sex. Should Glover choose to replead, she should clearly state facts supporting her conclusion that her termination was motived by sex.

Glover is informed that any amended complaint will replace her prior complaint and thus must stand on its own, without reference to the prior complaint. Therefore, Glover must include in the amended complaint all necessary information that was contained in the prior complaint. The amended complaint must be captioned as an "Amended Complaint" and bear the same docket number as this Order.

## CONCLUSION

For the reasons set forth above, FMCP's motion to dismiss is granted. Glover is granted 30 days' leave, from the date of this Order, to file an amended complaint with respect to her retaliation and discrimination claims against FMCP. If Glover fails to comply with this Order within the time allowed, or fails to cure the deficiencies discussed herein, judgment may enter against her. The Clerk of Court is directed to mail a copy of this Order to the *pro se* plaintiff and to note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
       Jan 3, 2020

s/ Roslynn R. Mauskopf
_____
ROSLYNN R. MAUSKOPF
United States District Judge